**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRIT OF FLORIDA**
**OCALA DIVISION**

UNITED STATES OF AMERICA,

-vs-                                                                       Case 5:25-CR-13-TPB-PRL

COREY WILKERSON

---

**MOTION TO DISMISS COUNT ONE OF THE INDICTMENT AS
UNCONSTITUTIONAL**

Defendant, COREY WILKERSON, through undersigned counsel, pursuant

to Fed. R. Crim. P. 12(b)(3) and moves to dismiss the Indictment on grounds that it

violates the First[1] and Fifth[2] Amendment of the United States Constitution.

On January 28, 2024 , Mr. Wilkerson was arraigned on an Indictment

charging that he "knowingly possessed a visual depiction of any kind, including a

drawing and cartoon, that depicts a minor engaging in sexually explicit conduct,

and is obscene and was transported or produced in interstate or foreign commerce

by any means, including a computer", in violation of 18 U.S.C. § 1466A(b)(1).[3]

---

[1] "Congress shall make no law …  abridging the freedom of speech." U.S. Const. Amend. 1 amend. I, cl.  3.
[2] "No person shall be …  deprived of life, liberty, or property, without due process of law.  U.S. Const. Amend. 5, cl. 4.
[3] "Any person who, in a circumstance described in subsection (d), knowingly possesses a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that depicts a minor engaging in sexually explicit conduct and is obscene." 18 U.S.C.S. § 1466A(b)(1) (punctuation altered).

1

The indictment alleges, specifically, that Mr. Wilkerson possessed "animated images of prepubescent and infant females engaged in sexually explicit conduct."

**Facts**

Mr. Wilkerson is a 31-year-old man who was living in Sumter County, Florida in October of 2023.  As a result of a complaint from the National Center for Missing and Exploited Children, Mr. Wilkerson was investigated for possibly downloading an image which was believed to be child pornography on a cell phone. Based upon this information, law enforcement obtained a search warrant and searched Mr. Wilkerson's cell phone and other electronic media.  During the search of the seized phone, law enforcement found over 10,000 images of anime including drawings of torture and bestiality, adults engaged in sexual acts, and  minors engaged in sexual acts. Additionally, law enforcement discovered one image of a child engage in a sexual act that was generated by artificial intelligence (AI).  That image appears similar to the anime created images.  In other words, the AI created image is similar to the anime images in that it presented a cartoonish image of a child. There were no unlawful  images of actual children.

Anime as an Art form

As noted in the applications for search warrants, "[t]he Japanese word anime is shortened from the word "animeshon," which means animation. Anime has had a long history in Japan, dating back to the early 20th Century.  The first known anime

2

was released in 1917, and since then, the medium has grown to become a major form of entertainment in Japan and around the world.  While this artistic style originated in Japan, its popularity led to other countries creating similar animation.  Anime is known for its distinct style, which is characterized by colorful, detailed animation and unique character design." Here are some images of anime:



Anime has many genres, including genres that reflect Japan's history of erotic art, such as Ero-Guro.[4]  Ero-Guro is an artform that explores eroticism, sexual corruption, and decadence. Ero-Guro became popular after World War II.  An example of an influential artist who worked in this style is Toshio Saeki. Toshio Saeki's work was exhibited in galleries in cities throughout the world, including in Toronto, Tel Aviv, San Francisco, San Jose, and Paris.  There are many other artists that have produced work in this genre.[5] [6]

---

[4] Silverberg, Miriam Rom.  "By way of Preface: Defining Erotic Grotesque Nonsense," Galley copy of the preface for Erotic Grotesque Nonsense:  The Mass Culture of Japanese Modern Times. December 12, 2005. https://en.wikipedia.org/wiki/Ero_guro#cite_note-ucla-1

[5] https://en.wikipedia.org/wiki/Toshio_Saeki_(artist)

[6] Hingley, Olivia, The illustrations of Toshio Saeki, death, pain and pleasure become one. (Nov. 16, 2023).

Title 18 U.S.C. § 1466A could reach the works of artist who work in the anime genre as well as many other genres. It could also impact individuals' artistic expression. Mr. Wilkerson contends that the indictment in his case should be dismissed because a §1466A is overbroad and vague. As a result, it will have a chilling effect on the production of art and infringe on the First Amendment rights of artists and individuals.

## MEMORANDUM OF LAW

### Overbreadth

In 2005, the United States Supreme Court issued an opinion that struck down provisions of the Child Pornography Protection Act, specifically Title 18 U.S.C. § 2256(8)(B) because it found the statue was overbroad and would have a chilling effect on artistic productions. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 241 (2002). The act criminalized the possession of "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, 'that "is, or appears to be, of a minor engaging in sexually explicit conduct, and any sexually explicit image that is 'advertised, promoted, presented, described or distributed in such a manner that conveys the impression' that it 'depicts a minor engaging in sexually explicit conduct.'" *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, at 241.

4

In reaching it ruling, the Court interpreted the statute in light of its precedent in *New York v. Ferber*, 458 U.S. 747 (1982) and *Miller v. California*, 413 U.S. 15 (1973). *Ferber* upheld a New York statute that banned images that were the product of child sexual abuse, finding that the production of the work itself, not its content were the target of the statute.  The court noted, '[t]he fact that the work contained serious, literary, artistic, or other value did not excuse the harm it caused to its child participants." *New York v.* Ferber, 458 U.S. 747 at 761. *Miller*, which involved advertisements distributed by an adult bookstore,  held that pornography in general could be prohibited  only if (1) the work, taken as whole, appeals to prurient interest, (2)is patently offensive in light of community standards, and (3) lacks serious literary, artistic, political, or scientific value. *Miller v. California*, 413 U.S. 15 at 24. This decision announcing a three-prong standard for prohibiting pornography became known as the *Miller*  test or standard. [7]

Because the statute, Title 18 § 2256(8)(B)  in *Ashcroft* targeted images that did not depict actual children, the court found the *Ferber* case was distinguishable. The harms associated with the production of  sexually explicit images using actual children were not a consideration for virtual depictions.   Further, the Court found that the statute in *Ashcroft*, did not meet the *Miller* test  for, although the statute

---

[7] See, Tehranian, John, "Sanitizing Cyberspace: Obscenity, Miller, and the Future of Public Discourse on the Internet", Journal of Intellectual Property Law,  School of Law University of Georgia, Vol 11, Issue 1, Article 7 (April 2016) which addresses the inadequacy of the Miller Test in the computer age. The article address among other issues, the inability to establish "community standards" or "serious scientific, literary or artistic value."

exempted work of serious literary, artistic, political, or scientific value, it did not require that the work be patently offensive in light of community standards. *Ashcroft v. Free Speech Association,* 533 U.S. 234 at 246. The court noted:

> The CPPA, however, extends to images that appear to depict a minor engaging in sexually explicit activity without regard to the Miller requirements. The materials need not appeal to the prurient interest. Any depiction of sexually explicit activity, no matter how it is presented, is proscribed. . .It is not necessary, moreover, that the image be patently offensive. Pictures of what appear to be 17-year-olds engaging in sexually explicit activity do not in every case contravene community standards.

In the case at hand, Mr. Wilkerson is charged by indictment under Title 18 U.S.C. § 1466A(b). Title 18 U.S.C. § 1466A(b) , in relevant part reads,

> (b) Additional Offenses.--Any person who, in a circumstance described in subsection (d), knowingly possesses a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that--
>
> (1)(A) depicts a minor engaging in sexually explicit conduct; and is  (B) obscene; **or**
>
> (2)(A) depicts an image that is, or appears to be, of a minor engaging in graphic bestiality, sadistic or masochistic abuse, **or sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; and**
>
> (B) lacks serious literary, artistic, political, or scientific value; or attempts or conspires to do so, shall be subject to the penalties provided in section 2252A(b)(2), including the penalties provided for cases involving a prior conviction.

*Id. ((emphasis added)*

In the instant case, as in *Ashcroft*, the statute fails to meet the requirements in *Miller.*  Further, as in *Ashcroft*, the justification for upholding statutes outlawing the production, distribution and possession of child pornography that were outlined in *Ferber* are not present in  § 1466A.  The statute  proscribes visual depictions

including drawings, cartoons, sculpture or paintings and computer-generated images.  Further,  § 1466A does not meet the *Miller* test, in that it does not require the proscribed material to be patently offensive in light of community standards. Title 18 U.S.C. § prohibits images of a minor engaged in sexual intercourse or sexual activity  that are not patently offensive in light of community standards.  Under (b)(2)(A) it is enough that sexual intercourse occur involving a minor.  Because, like the statute at issue in  *Ashcroft,* Title 18 U.S.C. § 1466A does not involve the sexual abuse of actual minor children as did the statute in *Ferber* and because, like the statute  in *Ashcroft*,  Title 18 U.S.C. § 1466A does not meet the test set forth in *Miller* it is overbroad and unconstitutional on its face.

Notably, in finding a facial challenge to the statute appropriate, the court in *Ashcroft* wrote,

> The First Amendment commands, "Congress shall make no law ... abridging the freedom of speech." The government may violate this mandate in many ways, but a law imposing criminal penalties on protected speech is a stark example of speech suppression. The CPPA's penalties are indeed severe. A first offender may be imprisoned for 15 years. A repeat offender faces a prison sentence of not less than 5 years and not more than 30 years in prison. While even minor punishments can chill protected speech, this case provides a textbook example of why we permit facial challenges to statutes that burden expression. With these severe penalties in force, few legitimate movie producers or book publishers, or few other speakers in any capacity, would risk distributing images in or near the uncertain reach of this law. The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere. Under this principle, the CPPA is unconstitutional on its face if it prohibits a substantial amount of protected expression.

*Id*. at 244. (Internal citations omitted).   As in *Ashcroft,* an offender prosecuted under Title 18 U.S.C. § 1466 A faces harsh penalties, specifically 10 years for a first offense and 20 years for a second offense.  The statute in the instant case is overbroad and facially unconstitutional.

### Vagueness

In addition to being overbroad, the statute is unconstitutionally vague. A criminal statute may be unconstitutionally vague if it either (1) fails "to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" or (2) authorizes or encourages "arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (citation omitted). A statute or regulation fails for vagueness if "men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Lanier*, 520 U.S. 259, 266 (U.S. 1997), *quoting Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926).

Laws that are insufficiently clear are void for three reasons: (1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on arbitrary or discriminatory interpretations by government officers; and (3) to avoid any chilling effect on the exercise of sensitive First Amendment freedoms. *See Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972).

Title 18 U.S.C. § 1466A is ambiguous. The law proscribes an obscene depiction of a minor engaging in sexually explicit conduct but does not define obscene or any manner of determining what constitutes obscenity nor does it define minor in the context of a visual depiction. *Reno v. American Civil Liberties Union,* 521 U.S. 844 (1997). (The acts failure to adequately define "the inherent vagueness" of *Miller's* "patently offensive" and the meaning of indecency resulted in a lack of the necessary precision required when an act of congress regulates the content of speech). In addition, a fictional character, like anime characters, has no age as it is drawn from someone's imagination. Some cartoon drawings often consist of just a few pen strokes and are limited in detail or, as in the case of some anime, may have exaggerated features. In some instances, it may not even entirely clear that characters depicted are, in fact, depictions of human beings. Here is an example of ambiguous anime[8]:

---

[8] Artist, Sendi, https://sketchmob.com/



Many cartoon characters, like the one above, resemble humans but possess many nonhuman attributes as well. The nature of an anime character and whether it is a minor child can be ambiguous. It can also be difficult, if not impossible, to determine the age of cartoon characters, let alone whether a subject of a drawing or sculpture is a minor. A reasonable person might be able to discern the age of an actual child captured in a photo or video. Further, that age is subject to investigation and verification. Drawings or cartoons, however, may contain few means of differentiating between a graphic depiction of a person under the age of 18 and a young adult. Here is an anime image of a romantic couple[9]:

---

[9] Creator Shima, credit Getty Images

10



Title 18 U.S.C. § 1466 provides no objective criteria to judge whether a drawing or painting is a minor or not. Here is an example of an ambiguous image Painted by French painter, Pierre Auguste Cot Cira 1880. The ages of the individuals depicted in the photograph are difficult to discern.



11

Indeed, a sexually explicit drawing of a young-looking 20-year-old, who actually exists, is punishable under the law at issue because it could be said that it "appears to be an image of a minor."

## Mere Possession of Obscenity

In *Stanley v. Georgia*, 394 U.S. 557, 564 (1969). The Supreme Court held that a Georgia statute that proscribed the mere possession of obscene material was unconstitutional. The case involved the possession of pornographic materials that were discovered in a home incident to the execution of a search warrant on an unrelated matter. Although the court noted that under its previous precedent in *Roth v. United States*, 354 U.S. 476 485 (1957) obscenity is not protected by the first amendment, it noted that *Roth* did not extend to the private possession of obscene material. *Id.* at 561.[10]

---

[10] As noted in *Riley v. California*, 573 U.S. 373 (2014), Justice "Learned Hand observed, that it is 'a totally different thing to search a man's pockets and use against him what they contain, from ransacking his house for everything which may incriminate him.' In his pockets contain a cell phone, however, that is no longer true. Indeed, a cell phone search would typically expose to the government far more than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form, unless the phone is."

As a general principle, the First Amendment bars the government from dictating what we see or read or speak or hear. *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002). "It is also well established that speech may not be prohibited because it concerns subjects offending our sensibilities." *Id.* "Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds." *Stanley*, 394 U.S. at 565. By banning mere possession of an obscene drawing that depicts a minor engaging in sexually explicit conduct, Congress has intruded into matters protected by the First Amendment. Congress has not articulated a compelling reason for banning private possession of obscene drawings.

As previously noted, under *Ferber,* laws outlawing the distribution of child pornography are justified because it "is intrinsically related to the sexual abuse of children in at least two ways. First, the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. Second, the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled." *Ashcroft v. Free Speech* Association, 535 U.S. 234 at 249. This rationale that supports laws against child pornography produced by exploiting children, however, does not justify 18 U.S.C. § 1466A(b)(1), which punishes drawings that do not involve actual children, "records no crime and creates no

13

victims by its production." *Ashcroft v. Free Speech Coalition*, 535 U.S. at 234 at 250.

The Eleventh Circuit recently upheld the prohibition of mere possession of images depicting a minor engaged in sexually explicit conduct under the statute at issue in this case. *United State v. Ostrander*, 114 F. 4th 1348 (11th Cir. 2024). In *Ostrander*, the Court recognized that the First Amendment protects the mere possession of obscene material in a private home, but ultimately upheld §1466A. *Id.* The court in its ruling found that the broad sweep of the statute did not target private possession of obscene materials. *Id.* Rather, the statute targeted those who download or exchange images from the internet. *Id.* at 1363. Further, the court concluded, there were no plausible examples of the application of the statute which would, in fact, proscribe private possession. *Id.* As a result, the court upheld the statute.

Regardless of the courts determination of its sweep, however, §1466A(b) does, in fact, punish private possession. It punishes "[a]ny person who, in a circumstance described in subsection (d), knowingly possesses a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting" that violates the statute. Therefore, a person who in his own home or on his private device has images that might fall under the statute's prohibition is subject to prosecution.

Further, the jurisdictional element of the statute is broad and encompasses "any visual depiction involved in the offense has been mailed or has been shipped

14

or transported in interstate or foreign commerce by any means, including by computer, or was produced <u>using materials that have been mailed</u>, or that have been <u>shipped or transported in interstate or foreign commerce by any means</u>, including by computer." *Id.* (emphasis added). This includes a painting on a wall, a comic book, a notepad shipped from another state with private drawings or a drawing on your phone, iPad, or computer.  Notably,  in our modern world art is regularly created on computers, e.g.,  computer graphics. Therefore, the sweep of the statute extends well beyond those who share or download images from the internet.

Finally, the court, in *Ostrander*,  determined that no plausible scenario exists where a person would be prosecuted for the mere possession of an obscene image. To the contrary, the facts in *Stanley* itself provide a clear example of how one could be prosecuted for private material.  The material is simply discovered in one's home or on one's private device by law enforcement engaged in an unrelated investigation. Another plausible example would be that an individual with different sensibilities could visit your home or use your computer and see an image that in their subjective determination depicts a minor that is engaged in "patently offensive" conduct. That individual could  report the images to law enforcement. Then in turn, law enforcement, in its subjective opinion,  could find the image or images fall under this particular statute and make an arrest.

Ultimately, 18 U.S.C. § 1466A(b)(1) violates the First Amendment because it intrudes on people's "right to be let alone" with their "beliefs, their thoughts, their emotions, and their sensations" or to feel free to express their artistic vision. St*anley,* 394 U.S. at 557; *Ashcroft*, 535 U.S. 324 at 246.  The *Miller* standard, like its predecessors, was an attempt to accommodate the State's interests "in protecting the 'sensibilities of unwilling recipients' from exposure to pornographic material and the dangers of censorship inherent in unabashedly content-based laws." *Ferber*, 458 U.S. at 756.  In this case §1466A does not meet the standard set forth in *Miller*, is overbroad, vague and violates individuals' freedom of speech and expression as guaranteed by the First Amendment.

WHEREFORE, Mr. Wilkerson respectfully request that this Court enter an Order dismissing Count One of the indictment as unconstitutional.

## CERTIFICATE OF SERVICE

I CERTIFY that a true copy of the foregoing, concomitant to filing, is electronically furnished to Hannah Watson Assistant United States Attorney.

October 27, 2025

Respectfully submitted:
/s/ *Christine Bird*
Christine N Bird, Esquire
Florida Bar 0971642
Ocala, Florida 34471
(352) 351-9157
Christine_bird@fd.org
Counsel for Corey Wilkerson